UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LORRE and GREG KANTZ,<br>　　　　Plaintiffs,<br>　v.<br>MITCH BRANTINGHAM; ALVIN MCNEIL; and LYON COUNTY,<br>　　　　Defendants. | Case No. 3:16-cv-00352-LRH-VPC<br><br>ORDER |

　　　Before the court is defendants Mitch Brantingham, Alvin McNeil, and Lyon County's (collectively "Defendants") motion for summary judgment. ECF No. 22. Plaintiffs Lorre and Greg Kantz (the "Kantzs") filed an opposition (ECF No. 26) to which Defendants replied (ECF No. 29).

**I.　Background**

　　　This is a Section 1983 action arising from the allegedly unlawful arrest of plaintiff Lorre Kantz ("Mrs. Kantz") by defendant Deputy Mitch Brantingham ("Deputy Brantingham") of the Lyon County Sheriff's Department. Mrs. Kantz, along with her husband Greg Kantz ("Mr. Kantz"), have brought suit against Deputy Brantingham; Sheriff Alvin McNeil ("Sheriff McNeil"), Sheriff of the Lyon County Sheriff's Department; and Lyon County.

　　　The allegedly unlawful arrest at issue occurred on May 26, 2015, in the town of Stagecoach in Lyon County, Nevada, after Deputy Brantingham and non-party Deputy Erick Kusmerz ("Deputy Kusmerz") responded to a 9-1-1 call made by non-parties the DeFord family, who alleged that Mr. Kantz and another unidentified person were standing on the edge of the

DeFord's property pointing rifles at them. ECF No. 26. When Deputy Kusmerz and Deputy Brantingham arrived at the DeFord's property they noticed a vehicle driving away. *Id.* The deputies followed the vehicle and initiated a traffic stop, at which point the Kantzs pulled over, stepped out of their car, and greeted the deputies. Because the 9-1-1 call involved a reported firearm, Deputy Kusmerz initiated a pat-down of Mrs. Kantz while Deputy Brantingham did the same to Mr. Kantz. Neither of the Kantzs had any weapons on their person. *Id.* Deputy Kusmerz then looked through the windows of the Kantzs' car and saw no visible weapons. *Id.*

Deputy Kusmerz took control of the scene as the investigating deputy [1] and left for the DeFords' property to collect photos and witness statements. Deputy Brantingham stayed with the Kantzs and acted as a cover officer.[2] *Id.* After Deputy Kusmerz left, the Kantzs asked Deputy Brantingham why they had been stopped and he explained the nature of the DeFords' 9-1-1 call. The Kantzs then described their long history with the DeFords to Deputy Brantingham, explaining that the DeFords frequently called the Sheriff's department to place meritless complaints against the Kantzs due to a long-standing feud between the two families. *Id.* Non-party Deputy Julie Redmond ("Deputy Redmond") then arrived on scene to assist Deputy Brantingham. Once Deputy Redmond arrived, Mrs. Kantz began to video record the interaction on her cell phone.[3]

After listing off many of the various complaints that the DeFords had made over the years, Mrs. Kantz mentioned to Deputy Brantingham that she planned to make a civil standby call[4] for the following day while she posted "No Trespassing" signs on her commercial property located across the road from the DeFords. ECF No. 8. Deputy Brantingham told Mrs. Kantz that no deputy would respond to such a call because she did not need a deputy present to set up the

---

[1] An investigating deputy is the deputy who leads the investigation and directs the actions of other deputies present on the scene. ECF No. 26-3 at 10.
[2] A cover officer's duty is limited to keeping an eye on suspects and interested parties and ensuring the safety of everyone on the scene. ECF No. 26-5 at 7.
[3] A copy of the cell phone video is attached as Exhibit 2 to Defendants' motion for summary judgment. *See* ECF No. 22, Ex. 2. Because Mrs. Kantz pointed the phone camera to the ground, only the parties' feet and their general movements are visible in the video. However, there is clear audio of the entire interaction between Deputy Brantingham and Mrs. Kantz from this point forward to her alleged unlawful arrest. As such, the evidence of the parties' interaction is largely undisputed.
[4] A civil standby call is a situation where a law enforcement officer is called to be present to keep the peace.

signs. Mrs. Kantz then asked how her previous civil standby call[5] and this new proposed call differed. ECF No. 26.

While discussing this unrelated issue, Deputy Brantingham ordered Mrs. Kantz to stop interrupting him or he would arrest her for obstruction. The Kantzs asked Deputy Brantingham what Mrs. Kantz could be obstructing and Deputy Brantingham responded that the interruptions were preventing him from asking any questions.[6] ECF No. 22; Ex. 2. Mrs. Kantz began to state that Deputy Brantingham could ask her any questions he wanted, but then shifted mid-sentence and requested an attorney. *Id.* Deputy Brantingham responded "okay," and ordered Mrs. Kantz to go sit on the back of her car. *Id.* Mrs. Kantz reiterated that she wanted an attorney, and Deputy Brantingham replied that she did not "have a right to one right now" and to "go sit down." *Id.* Mrs. Kantz asked why she had to go sit down, and Deputy Brantingham replied, "because I told you so." *Id.* Although initially turning towards their vehicle, Mrs. Kantz turned back to the face Deputy Brantingham, stating "I have to make sure I can still record." *Id.* Mrs. Kantz then walked towards her car, but stops to partially turn back to face Deputy Brantingham and say, "I take great offense to this; we're not second class citizens." *Id.* Mrs. Kantz then continued walking towards the back of her car.

Before she makes it to the car, Deputy Brantingham orders her to place her hands behind her back. Deputy Brantingham then conducted another search of Mrs. Kantz's person, despite witnessing Deputy Kusmerz perform the same search earlier. *Id.* Once again, no weapons were found on Mrs. Kantz's person. Mrs. Kantz then asked Deputy Bratingham why she was being arrested and he responded that she was not being arrested, but merely detained, at which point he handcuffed Mrs. Kantz and placed her in the back seat of his patrol car with the windows rolled up and all of the doors closed. ECF No. 26. After several minutes in the back of the car, Mrs. Kantz complained of trouble breathing. Deputy Brantingham called for medics who arrived at the scene and counseled that Mrs. Kantz had experienced an anxiety induced panic attack. *Id.*

---

[5] Deputy Brantingham was previously called out to the Kantzs' strip mall on "civil stand-by" to deal with the eviction of a tenant.

[6] Deputy Brantingham later admitted that he never asked Mrs. Kantz any questions, nor did he direct her to answer any, and that she had never refused to answer any questions posed to her. ECF No. 26, Ex.4 at 9; *Id.* Ex. 9 at 2.

1  Mrs. Kantz eventually recovered and Deputy Brantingham began transporting her to Lyon
2  County jail. ECF No. 22. During the transportation, Mrs. Kantz again complained of trouble
3  breathing and requested medical attention. ECF No. 26. Deputy Brantingham again called the
4  medics and released Mrs. Kantz from custody, allowing the medics to transport her to a hospital
5  where she was treated and eventually released. ECF No. 26. Subsequently, the Kantzs initiated
6  the present action against Defendants. ECF No. 1. Thereafter, Defendants filed the present
7  motion for summary judgment. ECF No. 22.

**II.     Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provide that a court shall grant summary judgment if the factual record, including depositions, interrogatories, admissions, and affidavits, "show that there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law." A "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-movant can show some clear dispute of fact, then summary judgment is inappropriate. The court is required to view the facts and draw all inferences in the light most favorable to the non-movant. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962). However, the non-movant must show more than merely a slight metaphysical doubt of the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To satisfy their burden on summary judgment, the Defendants, as movants, must show: (1) affirmative, non-contradicted evidence that negates an essential element of the Plaintiff's claims, or (2) demonstration that the Plaintiff's evidence is insufficient to support an essential element of their claim. *Celotex Crop. v. Catrett*, 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the movant has made a showing of either of the above, the burden shifts to the non-movant to show "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323.

///

///

4

**III.    Discussion**

In their complaint, the Kantzs allege five separate claims for relief. Their principal claim is a Fourth Amendment violation based upon Deputy Brantingham's unlawful arrest of Mrs. Kantz. *See* ECF No. 1. The Kantzs also allege several Nevada state-law claims against Defendants arising from the alleged unlawful arrest, including claims for false imprisonment, intentional infliction of emotional distress, and battery. *See* ECF No. 1. The court considers each of the Kantzs' claims below.

    **A.    Fourth Amendment Claim**

        **1.    Unreasonable Seizure under the Fourth Amendment**

The Fourth Amendment guarantees individuals the right to be secure in their persons against unreasonable seizures. U.S. Const. amend. IV. An arrest without a warrant or probable cause violates the Fourth Amendment as a matter of law because it constitutes an unreasonable seizure. *Dubner v. City &County of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). 42 U.S.C. § 1983 creates liability for any person who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Essentially, Section 1983 provides for tort liability against government actors who violate an individual's constitutional or legal rights. *Manuel v. City of Koliet, Ill.*, 127 S. Ct. 911, 916 (2017).

In their complaint, the Kantzs allege that Deputy Brantingham unlawfully and unconstitutionally arrested Mrs. Kantz without probable cause, thereby performing an unreasonable seizure in violation of her Fourth Amendment rights. *See* ECF No. 1. The court has reviewed the pleadings and documents on file in this matter and finds that Deputy Brantingham's actions constituted an arrest of Mrs. Kantz. In determining whether a person was placed under arrest, "the only relevant inquiry is how a reasonable [person] in the [given scenario] would have understood [their] situation," *Berkemer v. McCarty*, 468 U.S. 420, 421 (1984), and whether a "reasonable person would have concluded that he or she was free to leave," *U.S. v. Foster*, 70 Fed. Appx. 415, 417 (2003). Here, the undisputed record establishes that Deputy Brantingham placed Mrs. Kantz in handcuffs, locked her in the back of his car with the windows rolled up,

5

and at one point began to drive her to Lyon County Jail. Despite his statements to the contrary, Deputy Brantingham's actions went far beyond mere detention. Under the circumstances, no reasonable person would have concluded that they were free to leave; especially after Deputy Brantingham began to transport Mrs. Kantz to the county jail. Therefore, the court finds that Deputy Brantingham's actions constituted an arrest of Mrs. Kantz.

The question now turns to whether Deputy Brantingham had probable cause to arrest Mrs. Kantz. To make a lawful arrest, officers must have either probable cause or a warrant. *See generally Beck v. Ohio*, 379 U.S. 89 (1964) (discussing when a police officer can and cannot lawfully arrest and search a person). Probable cause to arrest a person exists "when there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). In their motion, Defendants contend that Deputy Brantingham had probable cause to arrest Mrs. Kantz because she violated NRS 199.280 while in his presence. NRS 199.280 charges anyone who "willfully resist[s], delay[s] or obstruct[s] a public officer in discharging or attempting to discharge any legal duty of his or her office" with a misdemeanor. Deputy Brantingham asserts that when Mrs. Kantz continued to interrupt, verbally disagree, express disapproval, challenge his orders, and then take approximately 30 seconds to go to the bumper of her car, that she was necessarily delaying and obstructing his legal duty, thereby violating NRS 199.280. ECF No. 29 at 3. Because she allegedly committed this misdemeanor in his presence, Deputy Brantingham argues that he had probable cause to arrest Mrs. Kantz pursuant to NRS 171.136. NRS 171.136 permits the arrest of any person who commits a misdemeanor in the presence of the arresting officer.

However, Ninth Circuit case law does not support Defendants' interpretation of NRS 199.280. In two cases analyzing Cal. Penal Code § 148, which is materially identical to NRS 199.280, the Ninth Circuit held that citizens have "the right [to] verbally challenge the police" and that "verbal protests [cannot] support an arrest under § 148." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019 (9th Cir. 2015) (quoting *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995)). Similarly, the Ninth Circuit has held that police officers may not retaliate against individuals merely because of their expressed disagreement with the officer's actions,

6

because such retaliation "would constitute a serious First Amendment violation." *Duran v .City of Douglas*, 904 F.2d 1372, 1377-8 (9th Cir. 1974). While police may become aggravated by citizens verbally challenging them or expressing their disagreement, "they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Id.* at 1378.

The court recognizes that the parties characterize the events leading to Mrs. Kantz's arrest differently. However, because of the recording, there is no genuine dispute of fact regarding what was said between the parties. Even assuming Defendants' characterization of the events that Mrs. Kantz was overly argumentative, her behavior is insufficient as a matter of law to constitute a violation of NRS 199.280 under similar Ninth Circuit precedent. While it is undisputed that Mrs. Kantz questioned Deputy Brantingham's orders and challenged his authority to give them, there is no evidence that she ever refused to comply with his limited requests or to answer any questions. *See* ECF No. 26, Ex. 4 Brantingham's Depo. ("Q: Was [Mrs. Kantz] refusing to answer any questions by you or deputy Redmond? A: No, not that I remember."); Ex. 9 Defendants' Responses to Requests for Admission at 2 ("Q: Admit that you never told Lorre to answer any questions. A: Admit."). Deputy Redmond's testimony supports the court's finding that Mrs. Kantz never refused to answer any questions. *See* ECF No. 26, Ex. 5 Redmond's Depo. ("Q: Did you ever hear [Mrs. Kantz] refuse to answer questions posed by Deputy Brantingham? A: Do you mean like tell him, 'No, I'm not answering that'? I never heard her refuse."). Further, while Mrs. Kantz argued with Deputy Brantingham about an unrelated matter, this argument did not directly interfere with Deputy Brantingham's duty as a cover officer to secure the scene as Mrs. Kantz never attempted to leave or interfere with his duties. Thus, the court finds that Mrs. Kantz's conduct was not a violation of NRS 199.280. As such, Deputy Brantingham did not have probable cause to support Mrs. Kantz's arrest. Accordingly, Defendants are not entitled to summary judgment on the Kantzs' Fourth Amendment claim.

### 2. Qualified Immunity

Alternatively, Deputy Brantingham argues that, regardless of whether he had probable cause to arrest Mrs. Kantz, he is entitled to qualified immunity for his conduct. Qualified

7

immunity protects government officials, including law enforcement officers, from tort liability when: (1) the officer did not violate a plaintiff's constitutional rights; or (2) when the officer's conduct did not violate clearly established constitutional rights of which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As addressed above, the court finds that the Kantz have sufficiently established a violation of Mrs. Kantz's Fourth Amendment rights. Thus, the court shall focus on the "clearly established" factor.

Addressing the second requirement for qualified immunity, the court finds that it was clearly established in May 2015 that Deputy Brantingham did not have probable cause to arrest Mrs. Kantz simply for her verbal disagreement with his actions. Specifically, the Ninth Circuit held back in 1995 that "[a]ny reasonable officer would have known that [the police] needed more than [plaintiff's] hesitation to arrest [them]" under a similar obstruction statute. *Mackinney*, 69 F.3d at 1004 (holding that slow compliance with an officer's orders cannot be grounds for violation of § 148). Even before *Mackinney*, the Ninth Circuit held in 1987 that it is "[n]o less well established . . . that . . . police officers . . . , may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows – or should know – that much." *Duran*, 904 F.3d at 1378 (citing *Houstin v. Hill*, 482 U.S 451, 462 (1987)). Ninth Circuit precedent since that time has been consistent. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1174 (9th Cir. 2013) (denying police officers qualified immunity and holding that cursing and making obscene gestures at police officers does not create probable cause supporting an arrest under § 148 and therefore the subsequent arrest of plaintiff was unlawful and violated his Fourth Amendment rights); *People v. Wetzel*, 520 P.2d 416, 419-20 (Cal. 1974) (denying police officers qualified immunity and holding that they did not have a legal duty to move and arrest defendant under § 148 when she blocked the doorway of her home and refused to let officers in without a warrant). Therefore, because the Ninth Circuit has repeatedly and routinely held, prior to May 2015, that arresting an individual for their disagreements with officer conduct does not constitute obstruction and is a clear constitutional violation, the court finds that Deputy Brantingham is not entitled to qualified immunity.

### 3. Liability of Sheriff McNeil and Lyon County under *Monell*

The framework governing municipal and supervisory liability for Section 1983 claims was established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* provides that municipal and supervisory liability must be based on the enforcement of a specific policy or custom, rather than simple vicarious liability. *Id.* at 691. To meet this standard, the Kantzs must establish that some official policy or custom enforced by Sheriff McNeil and Lyon County led to the underlying constitutional violation. *See Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

A plaintiff can establish a policy or custom by demonstrating that the alleged constitutional violation was caused by a failure to properly train government employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989). This showing requires three elements: (1) the inadequacy of the training program "in relation to the tasks the particular officers must perform" and the alleged constitutional violation, (2) the relevant officials must have been deliberately indifferent to the rights of persons that the employees have contact with, and (3) the inadequacy of the training must have actually caused the violation. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted). "Deliberate indifference" requires proof that a municipal actor or the municipality disregarded a known or obvious consequence of their failure to properly train employees. *Connick v. Thompson*, 563 U.S. 51, 52 (2011).

In their motion, Lyon County and Sheriff McNeil assert that even assuming Deputy Brantingham committed a constitutional violation against Mrs. Kantz, they cannot be separately liable for that violation under *Monell* because a single constitutional violation is insufficient to establish the existence of an office or countywide policy or custom. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (holding that *Monell* liability of a government employer was improper when the alleged events were isolated or sporadic acts done by a single employee). Although generally true, a plaintiff may still establish liability under *Monell* without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to

1 handle recurring situations." *Long*, 442 F.3d at 1186 (quoting *Bd. Of County Comm'rs*, 520 U.S. at 409). If a plaintiff can show that future constitutional violations are highly likely because of an alleged failure to train, then they can make a facially plausible claim for liability under *Monell*. *Id.*

Here, the Kantzs argue that it is foreseeable that the deputies of Lyon County will encounter individuals in the future who express disagreement with officer actions, and challenge their authority, such that the situation that led to Mrs. Kantz's unlawful arrest is likely to re-occur. The Kantzs claim that the underlying constitutional violation occurred in this case because Sheriff McNeil and Lyon County "fail[ed] to enact a policy or train deputies regarding the exercise of First Amendment rights during encounters with deputies." ECF No. 26 at 15. In support of this claim, the Kantzs have pointed to the absence of any official policy from either the Sheriff's department or Lyon County regarding the procedures that deputies must follow when confronted with individuals who choose to criticize or even insult officers.[7] ECF No. 26. Further, Deputy Redmond, who supervises and trains junior deputies, testified in her deposition that "some [deputies] get very defensive if someone is interrupting them or being defiant . . ." and that the department has no policies regarding de-escalation of confrontations between civilians and deputies. *Id.* Ex. 5 at 21 ("Q: Is de-escalation something that you are trained to do? A: Not formally. It's just something that you kind of learn as you go."). Her testimony directly supports the Kantz's failure to train theory and there are facts sufficient to show a causal connection between this lack of training and the violation of Mrs. Kantz's Fourth Amendment rights. As such, the court finds that the Kantzs have raised a disputed issue of fact as to whether the current procedures of the Lyon County Sheriff's Department would lead to future Fourth Amendment violations. Accordingly, the court shall deny Defendants' motion for summary judgment on this issue.

///

///

---

[7] Additionally, the Kantzs point to the existence of a policy enacted by the Lyon County Sheriff's department of prohibiting cross-gender pat downs if a deputy of the same gender is on the scene and capable of performing the pat down. However, this policy was enacted after the May 26, 2015 incident. ECF No. 29 Ex. 3 at 6.

10

### B. The State Law Claims

Finally, Defendants argue that Deputy Brantingham is entitled to discretionary act immunity under NRS 41.032 from the Kantzs' state law claims. The court disagrees. NRS 41.032 provides immunity to officers in the performance or non-performance of discretionary acts "whether or not the discretion involved is abused." However, discretionary acts are not the same as acts of bad faith. Government officials and officers do not have immunity for actions that constitute intentional torts because such bad-faith conduct is "unrelated to any plausible policy objective and . . . do[es] not involve the kind of judgment that should be shielded from judicial second-guessing." *Franchise Tax Bd. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014) (internal quotation marks omitted) *overruled on other grounds by* 136 S. Ct. 1277 (2016). Viewing the facts in the light most favorable to the Kantzs, Deputy Brantingham's actions could constitute intentional acts, rather than discretionary acts, and are therefore unprotected by NRS 41.032. Thus, the court concludes that Deputy Brantingham is not entitled to discretionary act immunity. Accordingly, the court shall deny the Defendants' motion for summary judgment on these claims.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (ECF No. 22) is DENIED.

IT IS FURTHER ORDERED that the parties shall file a joint proposed pretrial order pursuant to Local Rules 16-3 and 16-4 within forty-five (45) days of the entry of this order.

IT IS SO ORDERED.

DATED this 19th day of July 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE